UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WILBERT JACKSON,

                Plaintiff,                **DECISION AND ORDER**

      v.                                                    6:17-CV-06448 EAW

LOUIS MASTRANGELO,

                Defendant.
_____

# INTRODUCTION

*Pro se* plaintiff Wilbert Jackson ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983 against defendant Rochester Police Department Officer Louis Mastrangelo ("Defendant"). (Dkt. 1). Plaintiff alleges that Defendant violated his Fourth Amendment rights during a traffic stop on January 3, 2016. (*See id.*). Presently before the Court are the parties' cross-motions for partial summary judgment. (Dkt. 102; Dkt. 103). For the following reasons, Defendant's motion is granted in part and denied in part, and Plaintiff's motion is denied.

# FACTUAL BACKGROUND

The following background is taken from Defendant's Statement of Undisputed Facts on Motion for Summary Judgment (Dkt. 102-2), Plaintiff's Statement of Undisputed Material Facts (*see* Dkt. 103 at 2-8), and the exhibits the parties submitted. Unless otherwise noted, the facts are undisputed.

On December 28, 2015, near 381 Lexington Avenue in Rochester, New York, Defendant performed a traffic stop of an uninspected white Volvo XC70 operated by Plaintiff. (*See* Dkt. 102-2 at ¶¶ 1-2; Dkt. 103 at 2-3, ¶ 4; *see also* Dkt. 102-4 (copy of police report for Defendant's traffic stop of Plaintiff on December 28, 2015)). Plaintiff did not have a valid driver's license, and Defendant arrested Plaintiff for aggravated unlicensed operation of a motor vehicle in the third degree. (*See* Dkt. 102-2 at ¶ 2; Dkt. 102-4). As Plaintiff was exiting the vehicle, Defendant contends that he observed in plain view a sandwich bag containing marijuana, which Defendant seized. (*See* Dkt. 102-4). Defendant also learned then that Plaintiff previously had been convicted of criminal possession of a weapon in 2010 and was out on bail pending the disposition of several charges, including: (1) criminal possession of a weapon; (2) resisting arrest; (3) possession of a loaded firearm; and (4) assault in the second degree. (*See* Dkt. 102-2 at ¶ 3).

Several days later, on January 3, 2016, Defendant observed the same white Volvo XC70 driving southbound on Maryland Street. (*See* Dkt. 102-2 at ¶ 4; *see also* Dkt. 102-5 at 1-4 (copy of police report for Defendant's traffic stop of Plaintiff on January 3, 2016)). Defendant ran the Volvo's tags and confirmed that the vehicle had not yet been inspected. (Dkt. 102-2 at ¶¶ 5-6). Defendant then performed a traffic stop of the vehicle as it pulled into the driveway of 15 Brooklyn Street. (*See id.*). According to Plaintiff, however, Defendant initiated the traffic stop after Plaintiff was already sitting in the driveway of 15 Brooklyn Street for approximately eight minutes. (*See* Dkt. 103 at 2-3, ¶ 4).

Defendant approached the driver's side of the vehicle, and Plaintiff rolled the window down. (*See* Dkt. 102-2 at ¶ 7; Dkt. 103 at 3-4, ¶ 5). Defendant informed Plaintiff

that the vehicle had not yet been inspected, and Plaintiff apparently indicated to Defendant that he was at 15 Brooklyn Street to get repairs so that the vehicle would pass inspection. (*See* Dkt. 102-2 at ¶ 9; Dkt. 103 at 3-4, ¶ 5; *see also* Dkt. 102-5 at 3). Defendant also informed Plaintiff that he could smell marijuana in the vehicle, and according to Defendant, Plaintiff replied "we just got done smoking it." (Dkt. 102-2 at ¶¶ 8, 10). But according to Plaintiff, he told Defendant: "No, you don't smell any marijuana, and there's no marijuana in here." (*See* Dkt. 103 at 3-4, ¶ 5 (citation modified)).

Defendant instructed Plaintiff to exit the vehicle, and Plaintiff complied. (*See* Dkt. 102-2 at ¶ 12; Dkt. 103 at 3-4, ¶ 5). Defendant then began a pat-frisk search of Plaintiff's person. (*See* Dkt. 102-2 at ¶ 12; Dkt. 103 at 4-7, ¶¶ 6-9). When Defendant went to check Plaintiff's waistband, Plaintiff began turning his hips away from Defendant, and Defendant held on in a purported attempt to release any weapons secured by the waistband. (*See* Dkt. 102-2 at ¶¶ 12-13; Dkt. 103 at 6-7, ¶ 9). Defendant alleges that he observed a clear sandwich bag full of glassine envelopes containing a white, chalky, and rock-like substance near Plaintiff's groin. (*See* Dkt. 102-2 at ¶ 14; Dkt. 103 at 6-7, ¶ 9). Defendant then forcibly removed the sandwich bag from Plaintiff's groin, and upon testing, the glassine envelopes contained crack cocaine and heroin. (*See* Dkt. 102-2 at ¶¶ 15-16; Dkt. 103 at 6-7, ¶ 9; *see also* Dkt. 102-5 at 11-12 (copies of Defendant's supporting depositions for drug field tests)). Plaintiff contends that Defendant's use of force and contact with his genitals during this encounter was excessive and unnecessary. (Dkt. 103 at 7, ¶ 9).

Defendant arrested Plaintiff, and a grand jury indicted Plaintiff for criminal possession of a controlled substance. (*See* Dkt. 102-2 at ¶ 17; *see also* Dkt. 102-6 at ¶¶ 7-

8).  Plaintiff ultimately pleaded guilty to criminal possession of a weapon in the second degree in full satisfaction of all the charges pending against him, including the criminal possession of a controlled substance charge stemming from the incident on January 3, 2016.  (*See* Dkt. 102-2 at ¶ 18; Dkt. 102-6 at ¶ 9; *see also* Dkt. 83-3 (copy of transcript of Plaintiff's plea hearing held before Monroe County Court Judge Christopher S. Ciaccio on June 30, 2016)).

## **PROCEDURAL HISTORY**

Plaintiff commenced the current action on July 7, 2017.  (Dkt. 1).  On May 14, 2018, the Court granted Plaintiff's motion to proceed *in forma pauperis* and screened Plaintiff's complaint.  (Dkt. 5).  In the screening order, the Court concluded that Plaintiff had sufficiently alleged a Fourth Amendment claim against Defendant and a failure to intervene claim against two other defendants.  (*Id.* at 2-4).  On August 2, 2018, Defendants filed a motion to dismiss (Dkt. 8), which the Court denied (Dkt. 26).  Defendants answered the complaint (Dkt. 30), and scheduling orders were issued (Dkt. 33; Dkt. 41).

Discovery closed on April 6, 2021 (Dkt. 41), and Defendants filed a motion for summary judgment on June 15, 2021 (Dkt. 45).  On January 31, 2022, the Court granted in part and denied in part the motion for summary judgment.  (Dkt. 52).  Specifically, the Court granted Defendants' motion with respect to any claim based on the Fourteenth Amendment and with respect to Plaintiff's failure to intervene claim but denied the motion for summary judgment as to Plaintiff's excessive force claim against Defendant.  The Court also clarified that to the extent that Plaintiff seemed to argue that the initial traffic stop and search itself were unlawful, any such claim was not cognizable because Plaintiff did not

allege such a claim in his complaint or seek leave to amend to include such claim at any point in the proceeding. Further, the Court held that any such claim would be barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), in light of Plaintiff's guilty plea to criminal possession of a controlled substance. (*Id.* at 6-7).

On April 8, 2022, the Court issued a Pretrial Order setting a trial date of August 15, 2022. (Dkt. 58). At Plaintiff's request, the Court adjourned the trial date. (Dkt. 66). An amended pretrial order was issued on March 31, 2023, setting a new trial date of October 16, 2023. (Dkt. 72). A pretrial conference was held on October 2, 2023. (Dkt. 76).

Upon review of Defendant's pretrial submissions, which contained information that contradicted facts within earlier filings relied upon by the Court in its summary judgment decision, the Court raised the issue of whether the Court's summary judgment determination on the viability of Plaintiff's search claim remained accurate. Specifically, because Defendant clarified in his pretrial submissions that Plaintiff had pleaded guilty to a weapons charge in exchange for the drug charges arising from the January 3, 2016 stop being dropped, the Court queried whether *Heck* would nevertheless bar any purported search claim arising from the January 3, 2016 stop. On October 10, 2023, the Court issued a Text Order inviting supplemental briefing addressed to this question. (Dkt. 78). The Court subsequently granted the parties leave to file motions for summary judgment solely as to the lawfulness of the search of Plaintiff's person, including any qualified immunity issues related to the same. (*See* Dkt. 85; Dkt. 101).

On September 16, 2024, Defendant filed his renewed motion for summary judgment. (Dkt. 102). On September 23, 2024, Plaintiff filed his motion for summary

judgment.  (Dkt. 103).  On November 22, 2024, Defendant filed a response (Dkt. 108) and on December 11, 2024, Plaintiff filed his response (Dkt. 110; Dkt. 111).[1]

## DISCUSSION

### I. Legal Standards

#### A. Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Court should grant summary judgment if, after considering the evidence in the light most favorable to the non-moving party, the Court finds that no rational jury could find in favor of that party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).  "Where, as here, cross motions for summary judgment are filed, [courts] 'evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the

---

[1] Both parties' motions can be plausibly read as also seeking summary judgment on Plaintiff's Fourth Amendment excessive force claim against Defendant.  (*See, e.g.*, Dkt. 102-7 at 11 (requesting that "the entirety of [Plaintiff's] action . . . be dismissed if an evidentiary question of fact is not established in opposition to th[is] motion"); Dkt. 103 at 38 (arguing that "the substance of the material facts in this case . . . illustrate that Defendant used excessive force against Plaintiff" (citation modified))).  These portions of the pending motions are denied because they exceed the scope of the Court's permission to renew summary judgment motions on the limited question of the search of Plaintiff's person and there are also genuine issues of material fact on the amount of force used by Defendant to remove the sandwich bag from Plaintiff's groin, as this Court previously ruled.  *See* Dkt. 52; *see also Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.").

party whose motion is under consideration.'" *Walker v. Carrozzo*, 664 F. Supp. 3d 490, 505 (S.D.N.Y. 2023) (quoting *Byrne v. Rutledge*, 623 F.3d 46, 53 (2d Cir. 2010)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concerta Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation modified). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

In addition, "it is well settled that *pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that

they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (citation modified). Despite this liberal approach, allegations unsupported by admissible evidence "do not create a material issue of fact" and cannot overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

**B. Section 1983**

"Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985)). A plaintiff "must demonstrate that the challenged conduct was 'committed by a person acting under color of state law,' and 'deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Jie Yin v. NFTA*, 188 F. Supp. 3d 259, 268-69 (W.D.N.Y. 2016) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). But a plaintiff cannot rely on a *respondeat superior* theory of liability, *see Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003), and "must directly plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution,'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

**II. <u>Analysis</u>**

In his renewed summary judgment motion, Defendant does not center his argument on the applicability of *Heck* but instead stresses that he is entitled to summary judgment on Plaintiff's Fourth Amendment illegal search claim because his search of Plaintiff's person

was lawful.  (*See* Dkt. 102-7 at 6-9).[2]  He also argues that he is entitled to qualified immunity.  (*See id.* at 9-11).  Plaintiff, on the other hand, argues that summary judgment in his favor is appropriate because Defendant performed a highly intrusive body cavity search without any articulable basis in law.  (*See, e.g.*, Dkt. 103 at 36).  After reviewing the parties' submissions, the Court concludes that a Fourth Amendment claim arising from the initiation of the search of Plaintiff's person is not viable.

"The Fourth Amendment protects 'against unreasonable searches and seizures.'" *United States v. Weaver*, 9 F.4th 129, 138 (2d Cir. 2021) (quoting U.S. Const. amend. IV). "Warrantless searches and seizures are 'per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'"  *Id.* (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).  One such exception is a search incident to a lawful arrest.  *See United States v. Perea*, 986 F.2d 633, 642 (2d Cir. 1993).  "The justification for that exception is the need to ensure that the

---

[2]  Because the *Heck* bar is jurisdictional in nature, the Court has independently considered whether *Heck* would preclude Plaintiff's § 1983 claims relating to the initiation of the search in this case.  Although there is support in the caselaw for this contention, it does not conclusively direct that *Heck* would clearly bar any claim addressed to the initiation of the search of Plaintiff's person during the incident at issue, *see, e.g.*, *Vincent v. Winski*, No. 14-CV-7744 (VSB), 2018 WL 1441370, at *8 (S.D.N.Y. Mar. 22, 2018) ("Absent case law to the contrary and even considering the finality otherwise granted to plea bargains, I do not find that a civil rights plaintiff concedes the lawfulness of an arrest where, as here, his guilty plea was to an entirely different charge stemming from entirely different events that occurred on different dates from the date of the offense to which the plaintiff pled guilty."); *see also Johnson v. Persinger*, No. 18-CV-1152-(JLS)(HKS)*,* 2023 WL 5839797, at *11 (W.D.N.Y. July 7, 2023) (concluding that *Heck* did not bar claims for false arrest and false imprisonment where the underlying guilty plea was to an offense involving different conduct), *report and recommendation adopted in relevant part*, 2023 WL 5807067 (W.D.N.Y. Sept. 7, 2023), and accordingly, the Court considers Plaintiff's claim on the merits.

person arrested [does] not have access to a weapon or to destructible evidence." *Id.* at 643. Accordingly, during an arrest, "officers may search 'the arrestee's person and the area within his immediate control.'" *Id.* (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)).

Here, as a threshold matter, the Court continues to conclude that because Plaintiff did not plead a claim relating to the lawfulness of the initiation of the search in his complaint, nor seek leave to amend at any point in the proceedings to pursue such a claim, the claim fails on this basis alone.[3] But even if he had, a claim for an unlawful search of his person cannot withstand summary judgment based on the undisputed facts of this case. Notably, neither party contests that Defendant observed Plaintiff operating an uninspected white Volvo XC70 on both December 28, 2015, and January 3, 2016. (*See* Dkt. 102-2 at ¶¶ 1-2, 4-6; Dkt. 103 at 2-3, ¶¶ 3-5). Plaintiff himself concedes that his inspection sticker was expired on January 3, 2016, when Defendant approached him, seated in the driver's seat of the car, and that he knew that the vehicle was unregistered when he lowered the car window at Defendant's request. (*See* Dkt. 103 at 3 ("The officer [Defendant Mastrangelo] then took a couple of steps toward the front of my vehicle and stared at my front windshield, looking at the inspection sticker. He then stepped back over to my drivers [] window and

---

[3]  Indeed, it is not even clear from Plaintiff's submissions that he is intending to pursue such a claim now. (*See* Dkt. 110 at 10 ("It is noteworthy that Plaintiff makes it clear that he is not challenging the vehicle and traffic stops or my removal from the vehicle and I acknowledge that I was subject to a 'pat down' search by Officer Mastrangelo.")). Because other portions of Plaintiff's submissions on the pending motions suggest that he is in fact contesting the lawfulness of the stop and search of his person, the Court has addressed the merits of such claim as set forth herein.

stated 'Your inspection sticker is expired'. I replied to the officer 'I know, I am in the process of taking care of that right now.'"). Therefore, even aside from the factual disputes over whether Defendant smelled marijuana as he approached Plaintiff's car or whether Plaintiff admitted as much, Defendant had probable cause to arrest Plaintiff for violating section 306(b) of New York's Vehicle and Traffic Law. *See* N.Y. Veh. & Traf. Law § 306(b) (McKinney 2015) ("No motor vehicle shall be operated or parked on the public highways of this state unless a certificate or certificates of inspection, as required by this article, is or are displayed upon the vehicle or affixed to the registration certificate for the vehicle as may be determined by the commissioner."); *see also* N.Y. Crim. Proc. Law § 140.10(1)(a) (providing that "a police officer may arrest a person [without a warrant] for . . . any offense when he or she has reasonable cause to believe that such person has committed such offense in his or her presence" (citation modified)); N.Y. Veh. & Traf. Law § 155 ("For purposes of arrest without a warrant, pursuant to article one hundred forty of the criminal procedure law, a traffic infraction shall be deemed an offense."); *see also United States v. Clarke,* No. 24 CR. 171 (ER), 2025 WL 1720037, at *4 (S.D.N.Y. June 20, 2025) ("Police officers possess 'probable cause to arrest an individual for even a minor traffic violation that is committed in the officer's presence.'" (quoting *United States v. Fayton*, 697 F. Supp. 3d 179, 191 (S.D.N.Y. 2023)); *Sander v. Twp. of Coxsackie Ct.,* No. 123-CV-783 (DNH/CFH), 2023 WL 6283510, at *6 (N.D.N.Y. Sept. 27, 2023) ("Courts have concluded that driving without a valid inspection sticker or an expired sticker establishes probable cause for a traffic stop."), *report and recommendation adopted*, 2023 WL 6929275 (N.D.N.Y. Oct. 19, 2023); *United States v. White*, 298 F. Supp. 3d 451, 458

(E.D.N.Y. 2018) ("As the Supreme Court and Second Circuit have made clear, an arrest is constitutionally proper even for minor traffic offenses.").

Further, because Defendant had probable cause to arrest Plaintiff for operating an uninspected motor vehicle, the search of Plaintiff's person was constitutionally permissible as a search incident to a lawful arrest, even if Defendant did not intend to arrest Plaintiff at the time of the search. *See United States v. Diaz*, 854 F.3d 197, 205-09 (2d Cir. 2017) (holding that officer with probable cause to arrest could conduct search of defendant's person incident to arrest, regardless of whether the officer had any intent of arresting him or was merely intending to issue a citation); *see also Hayes v. Condlin,* No. 22-CV-7295 (KMK), 2024 WL 776082, at *7 n.2 (S.D.N.Y. Feb. 26, 2024) ("The existence of probable cause will defeat a claim of . . . unreasonable search and seizure." (quoting *Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012))); *Guillen v. City of New York*, No. 19 CIV. 11784 (NRB), 2023 WL 2561574, at *7 (S.D.N.Y. Mar. 17, 2023) ("[W]ith respect to the pat frisk, 'as long as a police officer has probable cause to arrest a suspect prior to searching the suspect, the search [of plaintiff's person] will be valid, even if the officer initially had no intention of arresting the suspect.' Because the arresting officers had probable cause to arrest Guillen for his unilluminated license plate, they could properly frisk him for weapons, even though he had yet to be arrested." (quoting *United States v. Koron*, 101 F.3d 682, 683 (2d Cir. 1996))); *Guerrero v. City of New York*, No. 12-CV-02916, 2013 WL 673872, at *4 n.3 (S.D.N.Y. Feb. 25, 2013) ("[T]o the extent that Guerrero is basing his § 1983 claim on an allegedly unreasonable search, this claim fails as well, because a search incident to a lawful arrest is *per se* reasonable."); *Evans v. Solomon*, 681 F. Supp. 2d 233,

248 (E.D.N.Y. 2010) ("An arrest pursuant even to a simple traffic violation permits a search incident to arrest.").[4]

Alternatively, Defendant argues that he is entitled to qualified immunity on any claim arising from the initiation of a search of Plaintiff's person. "Any claim for damages against officials in their individual capacities . . . implicates the doctrine of qualified immunity." *Tanvir v. Tanzin*, 120 F.4th 1049, 1059 (2d Cir. 2024) (citation modified). "That doctrine 'shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)); *see Jones v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006) (explaining that "[q]ualified immunity shields police officers acting in their official capacity from suits for damages unless their actions violate clearly-established rights of which an objectively reasonable official would have known." (citation modified)).

---

[4] Defendant also argues that a pat-down of Plaintiff was justified in light of his recent prior encounter with Plaintiff, knowledge of Plaintiff's pending charges relating to weapon possession, the smell of marijuana, and Plaintiff's admission that he had smoked marijuana in the car. (*See* Doc. 102-7 at 7). Although the facts regarding the smell and use of marijuana are disputed, there is no dispute that Defendant pulled Plaintiff over less than a week earlier and was aware of Plaintiff's other pending charges, which included a weapons charge; and indeed, Plaintiff too states that he recognized Defendant from the previous encounter. (Dkt. 103 at 3). These undisputed facts, coupled with the uncontested vehicle registration violation, also provided Defendant with objective and particularized facts supporting a reasonable suspicion and lawful basis to pat-down Plaintiff for a weapon in connection with the stop. *See Arizona v. Johnson*, 555 U.S. 323, 326-27 (2009) (officers can pat down or frisk an individual's outer clothing following a traffic stop to discover the presence of a weapon as a protective measure if the officer has an articulable suspicion that the individual is armed and dangerous); *Terry v. Ohio,* 392 U.S. 1, 30 (1968) (same).

"In deciding whether an official is entitled qualified immunity, [a court] conducts a two-pronged inquiry, asking whether the facts shown make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct." *Soukaneh v. Andrzejewski*, 112 F.4th 107, 116 (2d Cir. 2024) (citation modified). "The Supreme Court has left it up to courts to decide the order in which to approach those questions." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Ultimately, however, "qualified immunity is defeated only if *both* requirements are met." *Nat'l Rifle Assoc. of Am. v. Vullo*, 144 F.4th 376, 389 (2d Cir. 2025).

Qualified immunity shields officers from liability under § 1983 for claims of unlawful search and arrest so long as "arguable probable cause" existed. *Myers v. Patterson*, 819 F.3d 625, 632 (2d Cir. 2016) (quoting *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2014)). Arguable probable cause exists if either "it was objectively reasonable for the officer to believe that probable cause existed," or "officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* at 633 (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)). And, as noted, where officers have probable cause to effect an arrest, they are entitled to search the suspect incident to that arrest without a warrant. *Barnes v. Carolan*, 819 F. App'x 51, 53 (2d Cir. 2020) ("Because the defendants had at least arguable probable cause to arrest Barnes for an open container violation, the search was also lawful.").

Because as set forth herein, the undisputed evidence, even when viewed in Plaintiff's favor, demonstrates that the initiation of the search of Plaintiff's person by

Defendant does not make out a constitutional violation because Defendant had probable cause—or at the very least arguable probable cause—to arrest Plaintiff for operation of an unregistered vehicle, Defendant is entitled to qualified immunity on Plaintiff's Fourth Amendment search claim. *See Soukaneh*, 112 F.4th at 116.

Accordingly, because no rational jury could find that Defendant violated Plaintiff's constitutional rights in the initiation of the search of his person, Defendant's motion for summary judgment on this claim is granted and Plaintiff's motion for summary judgment is denied. This determination does not preclude the admission of facts at trial concerning the initiation of the search as context for Plaintiff's remaining claim that concerns the manner that the search was conducted and force used during that search.

## **CONCLUSION**

For the reasons stated above, Defendant's motion for partial summary judgment (Dkt. 102) is granted in part and denied in part and Plaintiff's motion for partial summary judgment (Dkt. 103) is denied.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:   September 15, 2025
         Rochester, New York